# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA :
          : CRIMINAL NO. 10-99-RET-SCR
 *versus*      :
          :
THOMAS A. NELSON, JR.  :

## UNITED STATES' PRE-TRIAL MEMORANDUM

**MAY IT PLEASE THE COURT:**

The United States submits this memorandum to address substantive and evidentiary issues which may arise at trial.

## I. Substantive Issue - The Entrapment Defense

The United States anticipates that the defendant will argue he was entrapped. A defendant is entrapped and therefore not guilty if "the criminal intent was implanted in him by the government." United States v. Henry, 749 F.2d 203, 208 (5th Cir. 1984) (en banc). The rationale underlying the entrapment defense is that "Congress could not have intended criminal punishment for a defendant who has committed all the elements of a prescribed offense, but was induced to commit them by the Government." United States v. Russell, 411 U.S. 423, 435 (1973).

Entrapment is an affirmative defense and need not be disproved by the prosecution as an element of the crime. United States v. Brace, 145 F.3d 247, 257 (5th Cir. 1998) (en banc). "[M]ere assertion" of the defense will not warrant an entrapment instruction. United States v.

1

Barnett, 197 F.3d 138, 142 (5th Cir. 1999). Rather, a defendant who claims entrapment must demonstrate that "the government's conduct created a substantial risk that an offense would be committed by a person other than one ready to commit it." United States v. Bradfield, 113 F.3d 515, 521 (5th Cir. 1997). Specifically, the defendant must make a *prima facie* showing of "(1) his lack of predisposition to commit the offense and (2) some governmental involvement and inducement more substantial than simply providing an opportunity or the facilities to commit the offense." United States v. Theagene, 565 F.3d 911, 918 (5th Cir. 2009). If defendant fails to make a showing of either inducement or lack of predisposition, the issue should not be presented to the jury. See, e.g., United States v. Smith, 481 F.3d 259, 263 (5th Cir. 2007) (defendant failed to proffer evidence of lack of predisposition); United States v. Gutierrez, 343 F.3d 415, 419 (5th Cir. 2003) (defendant failed to make showing of government inducement).

To make a *prima facie* showing, the defendant must advance "substantial evidence," not just "a smattering or scintilla of evidence." United States v. Ogle, 328 F.3d 182, 187 (5th Cir. 2003). In the end, the evidence must be enough for a jury to find entrapment – that is, "evidence from which a reasonable jury *could* derive a reasonable doubt as to the origin of criminal intent." United States v. Nations, 764 F.2d 1073, 1080 (5th Cir. 1985).

If the defendant makes a *prima facie* showing of entrapment, the issue should be presented to the jury. The burden then shifts to the prosecution to disprove entrapment beyond a reasonable doubt. United States v. Thompson, 130 F.3d 676, 689 (5th Cir 1997). If the prosecution proves beyond a reasonable doubt either that defendant was predisposed to

2

commit the offense <u>or</u> that there was no Government inducement, the jury must find that the defendant was not entrapped.  <u>Id.</u>; <u>United States v. Wise</u>, 221 F.3d 140, 154 (5th Cir. 2000).

<em>Inducement</em>

To "induce" criminal conduct, the Government must do more than merely present a defendant with the opportunity or facilities for committing the offense.  <u>Sorrells v. United States</u>, 287 U.S. 435, 441 (1932).  It is, of course, entirely proper for the Government to conduct undercover investigations and offer individuals the opportunity to participate in criminal activity.  <u>Jacobson v. United States</u>, 503 U.S. 540, 548 (1992).  Thus, mere "government involvement" does not amount to "government inducement."  <u>Gutierrez</u>, 343 F.3d at 420.  Rather, "inducement consists of the creative activity of law enforcement officials in spurring an individual to crime."  <u>Bradfield</u>, 113 F.3d at 522.  Courts have found inducement based on coercion, threats, harassment, persistent solicitation, appeals to defendant's sympathies, and "actions designed specifically to take advantage of the defendant's weaknesses."  <u>Gutierrez</u>, 343 F.3d at 420; <u>see</u> <u>Theagene</u>, 565 F.3d at 922; <u>Nations</u>, 764 F.2d at 1080.

<em>Predisposition</em>

"Predisposition focuses on whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime."  <u>Theagene</u>, 565 F.3d at 919.  To make a showing of lack of predisposition, a defendant can rely on "lack of prior interest or experience related to the crime, significant hesitation or unwillingness, or attempts to return discussion to lawful conduct."  <u>Id.</u> at 920.

3

Case 3:10-cr-00099-BAJ -SCR   Document 81   05/21/11   Page 3 of 21

On the other hand, the Government may prove predisposition by relying on defendant's "desire for profit; [defendant's] demonstrated knowledge or experience with the criminal activity under investigation; the character of the defendant, including past criminal history; whether the government first suggested criminal activity; and the nature of the inducement offered by the government." United States v. Reyes, 239 F.3d 722, 739 (5th Cir. 2001).

Significantly, "a defendant's ready and willing participation in government-solicited criminal activity, standing alone, is sufficient to prove predisposition." Id. at 739. Moreover, the Government can rely on "evidence of *independently motivated behavior* that occurs *after* government solicitation begins" to prove predisposition. Brace, 145 F.3d at 262.

Finally, a defendant who is entrapped is not considered "always entrapped." See United States v. Morris, 974 F.2d 587, 588 (5th Cir. 1992). Such a defendant is **not** considered entrapped in later transactions where, after the first transaction, the defendant "began acting freely on his own, and was willing to commit the crime whenever the opportunity was afforded." United States v. Wells, 506 F.2d 924, 927 (5th Cir. 1975).

4

## II.  **Evidentiary Issues**

### A.  **Co-Conspirator Statements**

The United States may introduce several recordings of conversations between William Myles, a paid FBI source, and one of the defendant's co-conspirators, George L. Grace, Sr. Such conversations occurred from late August 2008 through early October 2008.

*Background*

This corruption investigation began when federal authorities learned that Grace, one of the defendant's close associates and the-then mayor of St. Gabriel, Louisiana, had engaged in multiple extortion schemes using his public office, including an attempt to obtain over $2,000,000 worth of a project.  One of his schemes was aimed at a businessman based in Baton Rouge whose company did business with St. Gabriel.  The other scheme was aimed at a businessman based in Houston in connection with projects in St. Gabriel.  Further investigation confirmed these extortion schemes and indicated that Grace engaged in a regular pattern of bribery and extortion.

To determine the scope and depth of the corruption surrounding Grace, federal law enforcement authorities used an undercover operation involving a conceptual product known as the "Cifer 5000."  The operation involved Myles, who was working for the FBI, introducing himself to Grace as a developer and businessman with projects ranging from real estate developments to a trash can cleaning business, i.e., Cifer 5000.[1]  Myles and Grace

---

[1] Myles is a citizen who was paid to work for the FBI in a covert capacity.  Myles is not facing any federal or state charges and has no prior convictions.  This is the only private, non-government employee used in this investigation.

5

subsequently engaged in several bribery transactions involving real estate development projects in St. Gabriel.

Through conversations from late August 2008 through October 2008, Grace identified the defendant, Maurice Brown (the-then Mayor of White Castle), and Derek Lewis (the Mayor of Port Allen) as his "A team" and indicated they were corrupt.[2] During such conversations, including an in-person meeting on October 1, 2008, Grace arranged for himself and his "A team" to meet with Myles and an undercover FBI agent known as DJ at a condominium in New Orleans. The purpose of the meeting was to provide Myles and DJ with the opportunity to market the Cifer 5000 to the mayors to consider for their municipalities. On behalf of the group, in exchange for attending the meeting, Grace arranged to have Myles and DJ provide the group with free tickets to the Saints game and luxury hotel rooms. During the October 6, 2008, meeting, Grace accepted a $2,000 cash bribe from DJ, stating that he would dole out the money to each of the mayors, including the defendant. The defendant later admitted to having received $300 cash that night from Grace knowing that the cash had come from DJ. The defendant subsequently took four cash bribes totaling $20,000 from an undercover FBI agent known as Mike King and Myles.

*Co-Conspirator Statements Admissible*

The United States may seek to introduce certain conversations involving Grace and Myles from late August through early October 2008. Such conversations were admitted during the recent trial of Maurice Brown. See United States v. Maurice Brown, Criminal No.

---

[2] Grace also identified the Mayor of Baker, Louisiana, as a close associate, but stated that he would do the Cifer 5000 deal straight.

10-100-BAJ-SCR.  In that matter, the defense filed a pretrial motion objecting to the admission of such conversations.  Following an evidentiary hearing, U.S. District Judge Brian A. Jackson ruled that such conversations were admissible pursuant to Federal Rule of Evidence 801(d)(2)(E), which provides that a statement made by a defendant's co-conspirator "during the course and in furtherance of the conspiracy" is not hearsay.  In doing so, Judge Jackson determined that, at the time of the conversations, a conspiracy existed involving Grace, Brown, Nelson, and Lewis, and that such conversations were made during and in furtherance of such conspiracy.

For a co-conspirator's statement to be admissible, the government must prove by a preponderance of the evidence that there was a conspiracy involving the declarant and the non-offering party, and that the statement to be admitted was made during the course and in furtherance of that conspiracy.  See Bourjaily v. United States, 483 U.S. 171, 175 (1987). This determination is a preliminary fact question and is governed by Rule 104(a) of the Federal Rules of Evidence.  In making this determination, the Court may consider the offered statements themselves.  Id. at 171.  Indeed, while some independent evidence must exist, the Supreme Court has made it clear that the statements themselves are properly considered, in addition to such independent evidence, when determining whether the United States has established by the preponderance of the evidence that (1) there was a conspiracy involving the declarant and the defendant and (2) the statements to be admitted were made during the course and in furtherance of that conspiracy.

Case 3:10-cr-00099-BAJ -SCR   Document 81    05/21/11   Page 7 of 21

"The conspiracy that forms the basis for admitting co-conspirators' statements need not be the same conspiracy for which the defendant is indicted." United States v. Arce, 997 F.2d 1123, 1128 (5th Cir. 1993); see also United States v. Ellis, 156 F.3d 493, 497 (3rd Cir. 1998) ("The law is well settled that out-of-court statements may be admissible under Rule 801(d)(2)(E) even if the defendant is not formally charged with a conspiracy in the indictment."). However, some Courts require that in order for a co-conspirator statement to be admitted, the conspiracy during which the statements were made must be "factually intertwined" with the offenses being tried. See United States v. Stratton, 779 F.2d 820, 828 (2nd Cir. 1985); United States v. Kendall, 665 F.2d 126, 131 (7th Cir. 1981).

In our case, the conversations at issue were in furtherance of a conspiracy involving the defendant and Grace to violate various federal and state criminal laws pertaining to bribery and illegal gratuities. The events comprising this conspiracy are clearly "factually intertwined" with the offenses being tried.

*Procedure for Determining Admissibility of Co-Conspirator Statements*

The defendant has not objected to the admissibility of the Grace recordings at this point, although he has indicated his intent to do so at trial. In United States v. Gonzales-Balderas, 11 F.3d 1218 (5th Cir. 1994), the Court found that, for purposes of practicality, the district court could conditionally admit co-conspirator statements at trial subject to the subsequent determination as to whether the government has established the requisite Rule 801(d)(2)(E) predicates. Id. at 1224; see also United States v. Fragoso, 978 F.2d 896, 899

8

(5th Cir. 1992) (court approved the deferral of a <u>James</u> ruling until the close of the government's case).

### B.    <u>Rule of Completeness (Rule 106)</u>

The United States intends to introduce recordings of the defendant made by Myles and two undercover FBI agents.  As to some of the recordings, the United States intends to introduce excerpts rather than the complete recordings.  We anticipate that the defendant may seek to introduce other portions of the excerpted recordings.   The introduction of such statements <u>by the defendant</u> would normally be prohibited as self-serving hearsay under Rule 801, Fed. R. Evid.  <u>See</u> Subsection J below.  However, given that the United States will have introduced portions of the recordings, the defense will likely cite Rule 106, Fed. R. Evid., (also known as the Rule of Completeness) as grounds for their introduction of other portions of the recordings.

Rule 106 provides:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part of any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

This rule partially codifies the common-law "rule of completeness."  <u>Beech Aircraft Corp. v. Rainey</u>, 488 U.S. 153, 172 (1988).  "Its purpose is to permit the contemporaneous introduction of recorded statements that place in context other writings admitted into evidence which, viewed alone, may be misleading."  <u>United States v. Branch</u>, 91 F.3d 699, 727 (5th Cir. 1996) (citations omitted).  To be admissible under Rule 106, the omitted portion

Case 3:10-cr-00099-BAJ -SCR   Document 81    05/21/11   Page 9 of 21

of the statement must be "relevant and necessary to qualify, explain, or place into context the portion already introduced." Id. at 728 (citing United States v. Pendas-Martinez, 845 F.2d 938, 944 (11th Cir. 1988); United States v. Crosby, 713 F.2d 1066, 1074 (5th Cir. 1983)).

In Branch, a law enforcement agent testified concerning portions of the defendant's post-arrest statement. On cross-examination, the defendant sought to introduce other portions of his post-arrest statement under Rule 106. The district court rejected the defendant's attempts to introduce such testimony on the grounds that the portions he sought to introduce were not "necessary to qualify, explain, or place into context" the portions of his statement introduced by the government. On appeal, the Fifth Circuit examined the statements in detail and affirmed the district court's rulings, holding:

> In short, the district court did not abuse its discretion in refusing to admit these portions of [the defendant's] post-arrest statement pursuant to Rule 106. We acknowledge the danger inherent in the selective admission of post-arrest statements. Neither the Constitution nor Rule 106, however, requires the admission of the entire statement once any portion is admitted in a criminal prosecution. We do no violence to criminal defendants' constitutional rights by applying Rule 106 as written and requiring that a defendant demonstrate with particularity the unfairness in the selective admission of his post-arrest statement. This, [the defendant] failed to do.

Id. (citations omitted) (emphasis added).

10

## C.    Background Evidence (Rules 401 & 402)

Some of the Government's evidence is not directly related to the charged offenses but is relevant background information.

Under Rule 402, Fed. R. Evid., relevant evidence is generally admissible and irrelevant evidence is not admissible.  Rule 401, Fed. R. Evid., defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

"Evidence that serves as background information about persons, subjects or things in a trial is generally admissible although it may not relate to a consequential fact."  Weinstein's Evidence § 401[05] (1991).  See United States v. Daly, 842 F.2d 1380, 1388 (2d Cir. 1988) ("the trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment.").  The Advisory Committee Notes to Rule 402 advise that "[t]he fact to which the evidence is offered need not be in dispute. . . .  Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding."  The Sixth Circuit has explained:  "The jury is entitled to know the 'setting' of a case.  It cannot be expected to make its decision in a void without knowledge of the time, place and circumstances of the acts which form the basis of the charge."  United States v. Roberts, 548 F.2d 665, 667 (6th Cir. 1977).  See, e.g., United States v. Carrillo, 20 F.3d 617, 620 (5th Cir. 1994) (tip that "Tito" was selling drugs was relevant because "the

11

government was entitled to give the jury background information to explain" police officer's actions); United States v. McNeal, No. 00-4401, 40 Fed.Appx. 164 (6th Cir. July 9, 2002) (unpublished) (evidence regarding search of cooperator's home, during which drugs and other evidence was located and for which defendant was present, was admissible background evidence).

### D. Unfair Prejudice (Rule 403)

Either party may argue at trial that certain evidence is "unfairly prejudicial" and should be excluded pursuant to Rule 403.

Rule 403, Fed. R. Evid., allows the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." It is worth noting that evidence is not excludable merely because it is prejudicial. "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." United States v. McRae, 593 F.2d 700, 707 (5th Cir. 1979). Unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 Advisory Committee Notes. Thus, Rule 403 "is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." McRae, 593 F.2d at 707. See United States v. Bermea, 30 F.3d 1539, 1562 (5th Cir. 1994) ("Rule 403 tips the balance in favor of the admission of relevant evidence, permitting exclusion only if

12

the evidence's probative value is *substantially* outweighed by the danger of unfair prejudice.").

E.     **Character Evidence (Rules 404(a) & 405)**

The Government anticipates that defense witnesses may attempt to testify impermissibly about defendants' character.  Testimony regarding a defendant's character may be inadmissible for two reasons: (1) if it relates to an irrelevant character trait; or (2) if it includes testimony as to specific instances of conduct.[3]

While Rule 404(a)(1) allows a defendant to introduce evidence of a pertinent character trait for the purpose of proving that he acted in conformity with the trait, this evidence must be relevant to a particular issue in the case—usually the state of mind necessary to the commission of the offense charged.  See also Fed. R. Evid. 401 (defining relevant evidence); 402 (excluding irrelevant evidence).  While evidence of defendants' character as to honesty and law-abidingness is relevant in this case, evidence of other character traits, such as generosity or kindness or work ethic, is not.

In addition, Rule 405(a) provides that character evidence is limited to opinion or reputation testimony.  Evidence of specific instances of conduct is permitted only on cross examination except "[i]n cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense."  Fed. R. Evid. 405(b).  Here, defendants'

---

[3]     Additionally, even pertinent character evidence should be excluded under Rule 403 if cumulative.  See United States v. Edwards, 702 F.2d 529, 530 (5th Cir. 1983) (holding that the introduction of character evidence by more than five character witnesses by a county commissioner convicted of a fraud scheme would have been cumulative).

13

character is not an essential element of any charge or defense. Thus, any character witnesses called by the defendants should be prohibited from testifying about defendants' good deeds.

### F.     **"Blunting the Sword" of Anticipated Impeachment**

Defendants will likely suggest that the cooperating source in this case is biased as a result of his payments from the FBI and his desire to assist a family member in a criminal case. Absent an "unequivocal commitment" by defense counsel not to impeach the confidential source on such bases, the prosecution may permissibly "blunt the sword" of anticipated impeachment by revealing such information first. United States v. Valley, 928 F.2d 130, 133-134 (5th Cir. 1991); see also United States v. Mitchell, 31 F.3d 271, 277 (5th Cir. 1994); United States v. Coleman, 997 F.2d 1101, 1105 (5th Cir. 1993).

### G.     **Impeachment with Prior Conduct (Rule 608(b))**

Rule 608 allows impeachment with specific instances of conduct only if "probative of truthfulness or untruthfulness." Fed. R. Evid. 608(b). "The reason for allowing cross examination under Rule 608(b) is to allow a party to attempt to cast doubt on a witness's reliability for telling the truth." Varhol v. Nat'l R.R. Passenger Corp., 909 F.2d 1557, 1567 (7th Cir. 1990) (en banc). As the Fifth Circuit has explained, prior conduct which is "irrelevant to a witness's character for truthfulness" is inadmissible. United States v. Parker, 133 F.3d 322, 327 (5th Cir. 1998).

Even where prior conduct is probative of truthfulness or untruthfulness, it may not be proved by extrinsic evidence. Fed. R. Evid. 608(b). As noted above, "[t]he cross-examining

14

attorney must take the witness' answer." United States v. Herzberg, 558 F.2d 1219, 1223 (5th Cir. 1977).

### H. Impeachment on Collateral Matters (Rule 403)

Defendant should not be allowed to introduce extrinsic evidence to impeach Government witnesses on collateral matters.

It has long been the rule that "[i]mpeachment by contradiction is not permitted on collateral matters." Head v. Halliburton Oilwell Cementing Co., 370 F.2d 545, 546 (5th Cir. 1967). As is commonly stated, "[t]he cross-examining attorney must take the witness' answer." Herzberg, 558 F.2d at 1223 (discussing Rule 608(b) and the prohibition of contradiction on collateral matters). The "rule serves 'to avoid confusion of the issues and undue extension of the trial.'" United States v. Tarantino, 846 F.2d 1384, 1409 (D.C. Cir. 1988). The "rule then is a particular instance of the trial court's general power under Fed. R. Evid. 403 to exclude evidence 'if its probative value is substantially outweighed . . . by considerations of undue delay, [or] waste of time.'" Id. (quoting Fed. R. Evid. 403).

The test for whether an issue is collateral is whether the proposed evidence would be admissible for any reason independent of contradiction. Head, 370 F.2d at 546. "[A] matter should not be deemed collateral if it is 'a contradiction of any part of the witness's account of the background and circumstances of a material transaction, which as a matter of human experience he would not have been mistaken about if his story were true.'" United States v. Carter, 953 F.2d 1449, 1458 n.3 (5th Cir. 1992) (quoting McCormick on Evidence, § 47 (1984)).

Case 3:10-cr-00099-BAJ -SCR    Document 81    05/21/11    Page 15 of 21

## I.    Good Faith Basis for Cross Examination (Rule 611(a))

Under Rule 611(a), the Court exercises control over the interrogation of witnesses and the presentation of evidence so as to facilitate the ascertainment of the truth.  Implicitly included within the mandate of Rule 611(a) is the obligation to insure that questions asked of witnesses, arguments of counsel, and the presentation of evidence are grounded in fact. Thus, a trial court "may, in its discretion, preclude questions for which the questioner cannot show a good faith basis."  See, e.g., United States v. Nixon, 777 F.2d 958, 970 (5th Cir. 1985) (prosecutor must have "a basis in fact" before "wafting before the jury 'did you know?' type questions . . . which can be fatal to the defendant"); United States v. Crosby, 713 F.2d 1066, 1075 (5th Cir. 1983) (prosecutor must have good faith basis for question posed to defense witness).  See also Rule 3.4 of the Louisiana Rules of Professional Conduct ("A lawyer shall not  . . . in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence. . . .").

Significantly, a lawyer's representation that his client provided the basis for a question is not necessarily a sufficient factual basis, particularly where the question is prejudicial.  In United States v. Lin, 101 F.3d 760, 767 (D.C. Cir. 1997), the D.C. Circuit upheld a trial court's restriction of cross examination of a Government witness.  The defense attorney asked the witness whether he was involved in a Chinatown gambling business. When the court requested a factual basis for the question following the Government's objection, the defense attorney indicated that his only witness was his client.  The court offered to hold a hearing, but the defense attorney declined to put his client on the stand to

16

establish a good faith basis for the cross examination. As a result, the trial court refused to allow the line of questioning. On appeal, the circuit court affirmed. The Court of Appeals explained that "counsel must have a reasonable basis for asking questions on cross-examination which tend to incriminate or degrade the witness and thereby create an unfounded bias which subsequent testimony cannot fully dispel." Id. at 768 (quoting United States v. Sampol, 636 F.2d 621, 658 (D.C. Cir. 1980) (citing United States v. Fowler, 465 F.2d 664 666 (D.C. Cir. 1972)).

**J.      Lay Opinion Testimony (Rule 701)**

The United States will ask Myles and the testifying undercover FBI agent to explain the meaning of statements made in recorded conversations. Such testimony is permissible lay opinion testimony.

Under Rule 701, Fed. R. Evid., a lay witness may offer opinion testimony if the testimony is "rationally based on the perception of the witness" and "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Among other things, "a lay witness' opinion concerning the declarant's statements or conduct may be helpful to the jury." United States v. Simas, 937 F.2d 459, 465 (9th Cir. 1991) (testimony regarding "vague and ambiguous statements during the course of the alleged crimes"); see also United States v. Parsee, 178 F.3d 374, 379-380 (5th Cir. 1999) (testimony by drug conspirator regarding meaning of coded conversation); United States v. Flores, 63 F.3d 1342, 1359 (5th Cir. 1995) (testimony by drug conspirator regarding meaning of taped conversations containing "code phrases and oblique references"); United States v. Graham,

17

856 F.2d 756, 759 (6th Cir. 1988) (testimony by undercover agent as to whether request for campaign contribution was meant as request for bribe); United States v. DePeri, 778 F.2d 963, 977 (3rd Cir. 1985) (testimony by participant in taped conversation with the defendant regarding meaning of "ambiguous references to events that are clear only to [the defendant] and his audience.").

### K.    Self-Serving Statements by Defendant (Rule 801(d)(2)(A))

Under Rule 801(d)(2)(A), Fed. R. Evid., a defendant's own statements are not considered hearsay if elicited by the party-opponent (i.e., the Government), but that rule does not apply if the defendant himself elicits his own out-of-court statements.  See United States v. Waters, 194 F.3d 926, 930-31 (8th Cir. 1999).   Accordingly, the defendant should not be permitted to elicit his own out-of-court statements using Rule 801(d)(2)(A) as authority for overcoming the hearsay rule.

### L.    Summary Evidence (Rule 1006)

The United States intends to introduce summaries of phone records and interstate payments by the City of New Roads.  Such summaries are admissible under Rule 1006, Fed. R. Evid.

Rule 1006, Fed. R. Evid., provides as follows:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary or calculation.  The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place.  The court may order that they be produced in court.

Summary testimony allows a prosecutor "to put the myriad of complex and intricate pieces of testimonial and documentary evidence comprising the puzzle together in a chronological fashion." United States v. Winn, 948 F.2d 145, 157 (5th Cir. 1991). The average jury cannot be expected to compile such a summary on its own. Id. at 158. "The admission of summaries of voluminous books, records, or documents offers the only practicable means of making their contents available to the judge and jury." Fed. R. Evid. 1006, Advisory Committee Notes.

"Rule 1006 requires only that the voluminous writings or records to be examined be voluminous and that in-court examination be inconvenient." United States v. Osum, 943 F.2d 1394, 1405 (5th Cir. 1991). Telephone records are a proper subject of summary evidence. See United States v. Williams, 264 F.3d 561, 574-575 (5th Cir. 2001) (summary chart detailing calls between defendant and co-conspirators properly admitted). The underlying records themselves need not be admitted into evidence. United States v. Valencia, 600 F.3d 389, 417 (5th Cir. 2010).

Unlike charts used for demonstrative purposes, "[a] summary chart that meets the requirements of Rule 1006 is itself evidence and no [limiting] instruction is needed." Williams, 264 F.3d at 575; United States v. Buck, 324 F.3d 786, 790-791 (5th Cir. 2003).

UNITED STATES OF AMERICA, by

JAMES STANLEY LEMELLE
Attorney for the United States, Acting Under
Authority Conferred by 28 U.S.C. § 515


/s/ Corey R. Amundson
Corey R. Amundson, LBN 28865
M. Patricia Jones, LBN 18543
Michael J. Jefferson, LBN 22430
Assistant United States Attorneys
777 Florida Street, Suite 208
Baton Rouge, Louisiana 70801
Telephone: (225) 389-0443
E-mail: corey.amundson@usdoj.gov

Case 3:10-cr-00099-BAJ -SCR   Document 81   05/21/11   Page 20 of 21

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 10-99-RET-SCR |
| *versus* | : | |
| | : | |
| THOMAS A. NELSON, JR. | : | |

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 21, 2011, a copy of the foregoing United States' Pre-Trial Memorandum was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to defense counsel by operation of the court's electronic filing system.

Baton Rouge, Louisiana, this 21th day of May, 2011.

UNITED STATES OF AMERICA, by

JAMES STANLEY LEMELLE
Attorney for the United States, Acting Under
Authority Conferred by 28 U.S.C. § 515

/s/ Corey R. Amundson
Corey R. Amundson, LBN 28865
M. Patricia Jones, LBN 18543
Michael J. Jefferson, LBN 22430
Assistant United States Attorneys
777 Florida Street, Suite 208
Baton Rouge, Louisiana 70801
Telephone: (225) 389-0443
Fax: (225) 389-0561
E-mail: corey.amundson@usdoj.gov