IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES | : | |
| *versus* | : | CRIMINAL NO. 10-99-RET-SCR |
| THOMAS A. NELSON, JR., | : | |
| Defendant. | : | |

## DEFENDANT'S PRE-TRIAL MEMORANDUM

Defendant Thomas A. Nelson, Jr. submits this memorandum to address substantive and evidentiary issues which may arise at trial.

### I. Substantive Issue - Entrapment

Defendant Thomas A. Nelson may raise the affirmative defense of entrapment. The purpose of the entrapment defense is to ensure that "Government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute." Jacobson v. United States, 503 U.S. 540, 548 (U.S. 1992).

Under the Fifth Circuit standard, "the defendant bears the burden of presenting evidence of both (1) his lack of predisposition to commit the offense and (2) some governmental involvement and inducement more substantial than

simply providing an opportunity or facilities to commit the offense." U.S. v. Ogle, 328 F.3d 182, 185 (5th Cir. 2003) (citation omitted). To receive a jury instruction on entrapment, the defendant must "provide a basis for a reasonable doubt on the ultimate issue of whether criminal intent originated with the government." United States v. Nations, 764 F.2d 1073, 1080 (5th Cir. 1985). Once the defendant has made this *prima facie* case for entrapment, "the burden shifts to the government to prove beyond a reasonable doubt that the defendant was disposed to commit the offense prior to first being approached by government agents." United States v. Bradfield, 113 F.3d 515, 521 (5th Cir. 1997).

*Predisposition*

In Bradfield, 113 F.3d at 522 (5th Cir. 1997), the Fifth Circuit distinguished between the "unwary innocent" and the "unwary criminal" in determining predisposition. The unwary criminal "readily avail[s] himself of the opportunity to perpetrate the offense," and "intend[s], [is] predisposed, or [is] willing to commit the offense before first being approached by government agents." Id. In United States v. Reyes, 239 F.3d 722 (5th Cir. 2001), the Court identified a number of factors relevant to the question of predisposition. While "[r]eady and willing participation in government-solicited criminal activity, standing alone, is sufficient to prove predisposition . . . '[w]hether the defendant demonstrated a reluctance to commit the offense that was overcome by government persuasion. . . . is the most

important factor in evaluating a defendant's disposition.'" Id. at 739 (quoting United States v. Skarie, 971 F.2d 317, 320 (9th Cir. 1992)). Other factors to be considered "include desire for profit; demonstrated knowledge or experience with the criminal activity under investigation; the character of the defendant, including past criminal history; whether the government first suggested criminal activity; and the nature of the inducement offered by the government." Id.

In Jacobson, the Supreme Court held as a matter of law that the defendant had been entrapped after two and a half years of receiving targeted mailings from the government seeking to induce him to receive illegal child pornography. The Court held that "rational jurors could not say beyond a reasonable doubt that petitioner possessed the requisite predisposition prior to the Government's investigation and that it existed independent of the Government's many and varied approaches to petitioner." 503 U.S. at 553.

*Inducement*

The Fifth Circuit has defined inducement as "the creative activity of law enforcement officials in spurring an individual to crime. It need not overpower the defendant's will. Neither does the entrapment defense require proof of threats or coercion." Bradfield, 113 F.3d at 522. In United States v. Theagene, 565 F.3d 911, 922 (5th Cir. 2009), the Court noted that "[p]ersuasion or mild coercion and pleas based on need, sympathy, or friendship can constitute sufficient inducement to

3

permit jury consideration of entrapment." (citations omitted). In this vein, the Court found inducement where a government informant appealed to the defendant with "a tale of financial woes, the need to support a new spouse, and terminal cancer, all the while knowing that [the defendant's] sister recently had died of cancer." Nations, 764 F.2d at 1080.

None of the foregoing is to say that police may not conduct undercover operations. The Supreme Court has recognized that "[c]riminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer." Id. at 372. It is only where "the criminal design originates with the officials of the Government . . . [that] stealth and strategy become as objectionable police methods as the coerced confession and the unlawful search." Id. (citation omitted).

## II. Evidentiary Issues

### A. Rule of Completeness (Fed. R. Evid. 106)

The government has indicated its intent to introduce into evidence excerpts of recordings of Nelson made by a paid informant and two undercover FBI agents. We intend to introduce additional portions of the excerpted recordings into evidence under Fed. R. Evid. 106, a partial codification of the common law Rule of Completeness. Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 172 (1988).

Rule 106 provides:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

The purpose of Rule 106 is " to permit the contemporaneous introduction of recorded statements that place in context other writings admitted into evidence which, viewed alone, may be misleading." United States v. Branch, 91 F.3d 699, 727 (5th Cir. 1996) (quoting United States v. Jamar, 561 F.2d 1103, 1108 (4th Cir. 1977)).

The rule's further purpose is to avoid "the danger that an out-of-context statement may create such prejudice that it is impossible to repair by a subsequent presentation of additional material." Beech, 488 U.S. at 172. Here the Court reflects the Advisory Committee's note to Rule 106, which points to two considerations motivating the rule: "The first is the misleading impression created by taking matters out of context. The second is the inadequacy of repair work when delayed to a point later in the trial." Fed. R. Evid. 106, Advisory Committee's Note.

The "fairness" requirement of Rule 106 limits its application to written or recorded statements that are "relevant and 'necessary to qualify, explain, or place into context the portion already introduced.'" Branch, 91 F.3d at 728 (quoting United States v. Pendas-Martinez, 845 F.2d 938, 944 (11th Cir. 1988)).

Two cases provide paradigmatic applications of Rule 106 to wrongfully excluded statements. In United States v. Haddad, 10 F.3d 1252 (7th Cir. 1993), a portion of the defendant's post-arrest statement—in which he admitted that he knew marijuana was under his bed—was admitted, but another portion—in which he denied knowing a gun was under his bed—was excluded. The Seventh Circuit, though ultimately ruling the omission harmless for other reasons, found that "[t]he whole statement should [have] be[en] admitted in the interest of completeness and context, to avoid misleading inferences, and to help insure a fair and impartial understanding of the evidence." Id. at 1259.

In United States v. Baker, 432 F.3d 1189 (11th Cir. 2005), the district court refused the defendant's motion to allow cross-examination of a detective on exculpatory portions of his post-arrest statements. Extending Rule 106 to oral testimony under Fed. R. Evid. 611(a), the 11th Circuit found that the "exculpatory statements were relevant to his involvement in acts implicating him in conspiracy and were necessary to clarify those portions related by [the d]etective . . . ." Id. at 1223.

*The Relevance Requirement Under Branch*

Branch, in addition to requiring that the complimentary portion of a writing or recording be necessary to qualify the admitted portion, also requires that it be "relevant." Branch, 91 F.3d at 728. Normally, under Rule 106 complimentary

evidence must "b[ear] a legal relation to the charges . . . ," United States v. Crosby, 713 F.2d 1066 (5th Cir. 1983), and be "relevant to specific elements of the Government's proof . . . ." United States v. Walker, 652 F.2d 708, 711 (7th Cir. 1981).

While the federal courts have not explicitly considered whether complimentary evidence may be relevant under Rule 106 in that it relates to an affirmative defense, a number of courts have intimated as much. In United States v. Kaminski, 692 F.2d 505, 522 (8th Cir. 1982), the Eight Circuit held that "The rule of completeness is violated . . . where admission of [a] statement in its edited form . . . excludes information substantially exculpatory of the declarant. Likewise, in United States v. Dorrell, 758 F.2d 427, 435 (9th Cir. 1985), the Ninth Circuit held that removal of a defendant's "explanation of the political and religious motivations for his actions" was permissible because "[t]he omitted portions of his confession were . . . not exculpatory." Thus, where a court finds sufficient evidence to raise a defense of entrapment, any portions of admitted recordings or writings that bear on that defense should be admitted under Rule 106 because such evidence is exculpatory and is relevant to the issues for which the prosecution carries the burden of proof.

*The Necessity Requirement Under Branch*

The two primary considerations underlying necessity are the possibility of

creating misleading impressions and the possible inadequacy of later repair work. Fed. R. Evid. 106, Advisory Committee's Note. Necessity may also be found where the government has provided incomplete evidence and the admitted portions may never otherwise be admitted. In <u>Walker</u>, 652 F.2d at 713, the Seventh Circuit worried that, "where the defendant elects not to testify . . . [i]f the Government is not required to submit all relevant portions of prior testimony which further explain selected parts which the Government has offered, the excluded portions may never be admitted." Excluding the complimentary evidence would "bear similarity to forcing the defendant to take the stand in order to introduce the omitted exculpatory portions of a confession [in] denial of his right against self-incrimination." <u>Id.</u> (citation omitted). Such an "incomplete presentation may have painted a distorted picture of [the defendant's] prior testimony which he was powerless to remedy without taking the stand." <u>Id.</u> Under the Ninth Circuit's reasoning in <u>Walker</u>, it would be manifestly unfair to allow the admission of incomplete and misleading recorded statements that may not be remedied absent Nelson being forced to take the stand.

### B. **<u>Fifth Amendment Privilege Against Self-Incrimination</u>**

The court must evaluate witness claims of privilege against self-incrimination under the Fifth Amendment to ensure that a real risk of injurious

disclosure exists. The basic approach for evaluating a privilege claim derives from Hoffman v. United States, 341 U.S. 479 (1951). Under this approach,

> outside the presence of the jury, the witness will allude in very general, circumstantial terms to the reasons why he feels he might be incriminated by answering a given question. The judge examines him only far enough to determine whether there is reasonable ground to apprehend danger to the witness from his being compelled to answer. If the danger might exist, the court must uphold the privilege . . . ." United States v. Melchor Moreno, 536 F.2d 1042, 1046 (5th Cir. 1976)

This method allows the Court to verify that a real risk of self-incrimination exists while avoiding actual disclosure that might harm the witness. Such a procedure is necessary because "courts cannot accept Fifth Amendment claims at face value." Id. When evaluating privilege claims, the court must determine "whether the witness is confronted with substantial and 'real,' and not merely trifling or imaginary hazards of incrimination. Id. (quoting Marchetti v. United States, 390 U.S. 39, 53 (1968).

In U.S. v. Gomez-Rojas, 507 F.2d 1213 (5th Cir. 1975), a defendant pleaded that he had been entrapped by a government informer. Upon receiving a subpoena, the informer resisted, claiming the Fifth Amendment privilege. The district court, without further inquiry, upheld the privilege claim. The Fifth Circuit ordered a new trial, requiring that "the trial court . . . hold a hearing to determine whether [the informer's] fear of self-incrimination is well-founded and what the parameters of his Fifth Amendment rights are in the context of the testimony that [the defendant]

9

wishes to obtain from him." Id. at 1220. See also, United States v. Waddell, 507 F.2d 1226, 1228 (5th Cir. 1975), where the Court held that, in a new trial, the district court "must make a searching inquiry into the validity and extent of [the witness'] Fifth Amendment claims."

Even when a privilege against self-incrimination is found, it will not necessarily allow the witness to make a blanket refusal to testify. "A court must make a particularized inquiry, deciding, in connection with each specific area that the questioning party wishes to explore, whether or not the privilege is well-founded." Melchor Moreno, 536 F.2d at 1049. A defendant may be "excluded from testifying only if the court ha[s] found that [he can] 'legitimately refuse to answer *essentially all* relevant questions.'" Id. (quoting Gomez-Rojas, 507 F.2d at 1220). Likewise, in North River Ins. Co. v. Stefanou, 831 F.2d 484, 487 (4th Cir. 1987), the Fourth Circuit found insufficient a claim of privilege where the defendant made a blanket assertion of privilege because a witness "assert[ing] the privilege must do so with respect to particular allegations, thereby allowing the trial judge to determine the propriety of each refusal." (quotation omitted).

### C. Coconspirator Exception to the Hearsay Rule

Fed. R. Evid. 801(d)(2)(E) allows admissions of "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" as an exception to the general rule prohibiting hearsay statements (Fed. R. Evid. 802).

10

*Proof Issues*

For a statement to be admitted under the exception to the rule against hearsay evidence, "[t]he government must prove by preponderance of the evidence (1) the existence of a conspiracy, (2) the statement was made by a co-conspirator of the party, (3) the statement was made during the course of the conspiracy, and (4) the statement was made in furtherance of the conspiracy." U.S. v. Delgado, 401 F.3d 290, 298 (5th Cir. 2005). (citation omitted).

Rule 801 provides that "[t]he contents of the statement shall be considered but are not alone sufficient to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E)." See also, U.S. v. Hall, 500 F.3d 439, 443 (5th Cir. 2007).

The Government must provide "the context in which [a] statement was made . . . or there can be "no basis for the trial court to find that the statement [was] made in furtherance of the conspiracy," unless the context is "obvious from the statement itself." United States v McConnell, 988 F2d 530, 534 (5th Cir. 1993).

The Fifth Circuit established in United States v. James, 590 F.2d 575, 582 (5th Cir. 1979), that ". . . because of the danger to the defendant if the statement is

not connected [to the defendant and the conspiracy] and because of the inevitable serious waste of time, energy and efficiency when a mistrial is required in order to obviate such danger . . . ," a "preferred order of proof" should be followed under which the Government must establish that a conspiracy existed and that the defendant was connected thereto before admitting a coconspirator's statements. This showing should be required "whenever reasonably practicable." Id.

Respectfully submitted, this 3rd day of June, 2011.

s/Page A. Pate
Page A. Pate
*Admitted as a Visiting Attorney*
Georgia Bar No. 565899
Pate & Brody, LLP
101 Marietta Street, Suite 3300
Atlanta, Georgia 30303
(404) 223-3310
Attorney for Defendant


s/ Michael A. Fiser
MICHAEL A. FISER
Attorney at Law
830 Main Street
Baton Rouge, LA 70802
Phone: (225)343-5059
Fax: (225)336-4667
Email: michael@fiserlaw.com
Bar Roll No: 28575

12

# CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed the foregoing **Pre-Trial Memorandum** with the Clerk of Court using the CM/ECF system which will automatically send email notifications of such filing to all counsel of record in this matter.

This 3rd day of June, 2011.

        s/Page A. Pate
        Page A. Pate
        *Admitted as a Visiting Attorney*
        Georgia Bar No. 565899
        Pate & Brody, LLP
        101 Marietta Street, Suite 3300
        Atlanta, Georgia 30303
        (404) 223-3310
        Attorney for Defendant


        s/ Michael A. Fiser
        MICHAEL A. FISER
        Attorney at Law
        830 Main Street
        Baton Rouge, LA 70802
        Phone: (225)343-5059
        Fax: (225)336-4667
        Email: michael@fiserlaw.com
        Bar Roll No: 28575
        Local Counsel for Defendant