UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | |
| THOMAS A. NELSON, JR. | NO.: 10-00099-BAJ-SCR-1 |

**RULING AND ORDER**

Before the Court is the **Motion to Vacate under 28 U.S.C. § 2255 (Doc. 217)** and the **Amended Motion to Vacate under 28 U.S.C. § 2255[1] (Doc. 246)** filed by Petitioner, Thomas A. Nelson, Jr. The United States filed an Opposition to both motions. (Docs. 237, 247). An evidentiary hearing on Petitioner's ineffective assistance of counsel claim was held on June 28, 2018 and July 19, 2018. For the following reasons, the **Motion to Vacate (Doc. 217) is DENIED AS MOOT** and the **Amended Motion to Vacate (Doc. 246) is DENIED**.

I. BACKGROUND

As part of an elaborate Federal Bureau of Investigation (FBI) investigation, undercover FBI agents posed as corrupt businessmen while marketing a product called Cifer 5000, which was touted as an automatic system for cleaning waste

---

[1] The Amended Motion was filed by Petitioner's retained counsel, and it features both Grounds contained in the original pro se motion. (*See* Docs. 217, 246). However, the amended motion seeks to advance the "cause and prejudice" principle of law for procedurally defaulted claims, and it withdraws Petitioner's ineffective assistance of counsel claim against one of the attorneys who previously represented Petitioner. (Doc. 246).

1

containers. *United States v. Nelson*, 732 F.3d 504, 509–12 (5th Cir. 2013). Throughout the investigation, Petitioner, the former Mayor of the City of New Roads, Louisiana, *inter alia*, accepted $20,000 in cash, proposed a kickback scheme to receive ten percent of the profits from the venture, and bragged about using his public office as mayor for personal benefits. *Id.* He also provided an official letter to the United States Environmental Protection Agency (EPA) in support of a multi-million-dollar grant request, as well as an investor letter to a "private investment group" in support of Cifer 5000. *Id.* at 511. Furthermore, Petitioner, *inter alia*, facilitated the passage of a resolution by the Louisiana State Legislature supporting the waste cleaning containers, and drafted a city ordinance benefiting Cifer 5000 by requiring sanitation of garbage cans in New Roads. *Id.*

On or about June 29, 2010, Petitioner, then represented by Attorney Mary Olive Pierson and Attorney Fred Crifasi, entered into a plea agreement in which he agreed to plead guilty to a Bill of Information charging bribery involving an entity receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(B). (Doc. 216-1). The plea agreement contained a stipulated factual basis and it provided that, if Petitioner failed to plead guilty, any information provided by Petitioner, including the stipulated factual basis, could be used against him in any prosecution. (*Id.* at ¶¶ 10, 6). The plea agreement also contained a provision stipulating that the gross proceeds of Petitioner's offense would total $22,053, which would be "the figure used for purposes of the [United States Sentencing Guidelines,] U.S.S.G. § 2C1.1(b)(2)." (*Id.* at ¶¶ 11,

2

13). On July 1, 2010, a Bill of Information charging Petitioner as contemplated in the plea agreement was filed. (*See* Criminal Number 10-92, Doc. 1).

On July 2, 2010, Petitioner, through Attorney Page Pate, Petitioner's then-newly acquired counsel, notified the United States that he no longer intended to plead guilty. (Doc. 66 at ¶ 2). Petitioner subsequently appeared in court and notified the Court that, upon reconsideration, he had decided to not plead guilty and instead, intended to proceed to trial. (*Id.*). Thereafter, the United States was granted permission to introduce the factual stipulation agreed to by Petitioner, but not the plea agreement itself, during its case-in-chief at trial. (Docs. 66, 80).

On August 18, 2010, Petitioner was charged by superseding indictment with violating the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Count One);[2] Honest Services Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 1346 (Count Two);[3] Use of Interstate Facility in Aid of Racketeering, in

---

[2] The "Means and Methods" allegations of the RICO count alleged numerous actions taken or agreed to by Petitioner in his capacity as Mayor in exchange for cash and other things of value, including agreeing to obtain a city contract, submission of the EPA letter, submission of the investor letter, promotion of the proposed city ordinance, facilitation of the state resolution, and use of the City's robo call service for the benefit of the Cifer 5000 Businesspeople. (Doc. 30 at pp. 2-4). The indictment charged two Louisiana state bribery offenses (La. R.S. 14:118) as racketeering acts, which included acceptance of multiple $5000 payments from the Cifer Businesspeople. (*Id.* at pp. 5–6).

[3] The wire fraud count incorporated the "Means and Methods" allegations of the RICO count and charged that Petitioner engaged in a scheme to "obtain cash and other things of value from the Cifer [B]usinesspeople in exchange for using his position as Mayor to promote and to obtain money for the Cifer 5000." (*Id.* at pp. 6–7). It alleged that Petitioner used an interstate wire communication to execute the scheme by transmitting an email regarding the use of the City's robo call service. (*Id.*).

violation of 18 U.S.C. 1952 (Counts Three – Six or "phone counts");[4] and Making False Statements to the FBI, in violation of 18 U.S.C. § 1001 (Count Seven).[5] (Doc. 30).

On June 22, 2011, after a jury trial, Petitioner was convicted on all counts; and on January 17, 2012, he was sentenced. (Docs. 112, 137). Thereafter, Petitioner appealed his conviction and sentence to the United States Court of Appeals for the Fifth Circuit. *Nelson*, 732 F.3d 504 (affirming Nelson's conviction, but ordering the Court to recalculate the sentence). Subsequently, Petitioner was resentenced on March 14, 2014 to a term of imprisonment of 120 months. (Doc. 194). On the second appeal, the Fifth Circuit affirmed the new sentence. *United States v. Nelson*, 631 F. App'x 237 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 172 (2016).

Petitioner filed a Motion to Vacate under 28 U.S.C. § 2255 on November 21, 2016. (Doc. 217). He amended his Motion to Vacate on June 6, 2018. (Doc. 246). Petitioner asserts three grounds for vacating his conviction. Two of them are based on the Supreme Court's 2016 decision in *McDonnell v. United States*. 136 S.Ct. 2355, 2372 (2016). First, he argues that the Court erroneously defined "official act" when it instructed the jury on the elements of bribery. (Doc. 217-1 at p. 8). Petitioner argues that his failure to raise this argument on appeal is excused by *McDonnell*, which was

---

[4] The four phone counts charged that Petitioner used a telephone to promote bribery offenses in violation of Louisiana law. (*Id.* at pp. 7–9). Each of the phone counts related to one of the four $5000 cash payments Petitioner received from the Cifer Businesspeople. (*Id.*).

[5] During Petitioner's interview with the FBI, he falsely stated that no person or business seeking to do business in New Roads had attempted to bribe him, that he had not received cash from any person or business seeking to do business in New Roads, and that his only sources of income were his salary as mayor and his wife's salary. (*Id.* at p. 10).

decided after Petitioner's appeal. Second, Petitioner argues that given *McDonnell*'s narrowing of what constitutes bribery, he is "actually innocent" of the bribery-based charges. (*Id.* at p. 5). Third, Petitioner asserts that Mr. Pate provided ineffective assistance of counsel and alleges that but for Mr. Pate's faulty advice, Petitioner would have pleaded guilty to the charge contained in the Bill of Information and would have received a lesser sentence. (*Id.* at pp. 4–5).

## II. LEGAL STANDARD

Section 2255 provides that a federal prisoner serving a court-imposed sentence may move the court to vacate, set aside or correct his sentence. 28 U.S.C. § 2255(a) (2012). Only a narrow set of claims are cognizable on a § 2255 motion. The statute identifies four grounds on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." *Id.*

## III. DISCUSSION

### A. *McDonnell v. United States*

Petitioner argues that his conviction should be vacated based on the Supreme Court's 2016 decision in *McDonnell v. United States*, which limited the scope of criminal liability for federal bribery offenses by narrowing the definition of "official act" within the meaning of 18 U.S.C. §201.[6] *McDonnell*, 136 S.Ct. 2355 at 2372.

---

[6] Under 18 U.S.C. § 201, a public official who receives or agrees to receive anything of value in return for being influenced in the performance of any "official act" faces criminal liability.

Petitioner makes two arguments based on *McDonnell*. First, Petitioner argues that the Court's jury instructions during Petitioner's trial were too broad and incorporated conduct that was not in fact criminal under 18 U.S.C. § 201 (Doc. 246-1 at p. 6). Petitioner asserts that his failure to raise this argument on appeal, which would ordinarily result in a procedural default, is excused by *McDonnell*, which was decided after Petitioner's appeal. (*Id.*). Second, Petitioner argues that he did not engage in activity that falls under the definition of "official act" as outlined by *McDonnell* and as such, he is "actually innocent" of the federal bribery charges. (Doc. 217-1 at p. 5). The Court addresses each of these arguments in turn.

### 1. *Improper Jury Instructions*

Petitioner argues that the Court's jury instructions were improper because they incorporated conduct that was not criminal in light of the *McDonnell* ruling. Petitioner did not raise this argument on direct appeal. A claim that has not been raised on direct appeal is considered procedurally defaulted and will not be considered on collateral review unless Petitioner can show (1) cause for his failure to previously raise the issue and (2) actual prejudice resulting from the alleged error. *United States v. Frady*, 456 U.S. 152, 167-168 (1982) (citing *Davis v. United States*, 411 U.S. 536, (1976)). "Cause" exists where a constitutional claim is so novel that its legal basis is not reasonably available to counsel. *Reed v. Ross*, 468 U.S. 1, 16 (1984). Petitioner argues that the *McDonnell* decision, which was decided after

Petitioner's trial and appeal, was so novel that its legal basis was not reasonably available to trial counsel. (Doc. 246 at p. 2).

In *McDonnell*, the Supreme Court held that an "official act" consists of two components. First, the Government must identify a "question, matter, cause, suit, proceeding or controversy" that "may at any time be pending" or "may by law be brought" before a government official. *Id.* at 2368. A "question" or "matter" must involve a "formal exercise of governmental power that is similar to a cause, suit, proceeding, or controversy" but that does not necessarily fall into one of those prescribed categories. *Id.* at 2369. Furthermore, a "question" or "matter" must be something relatively circumscribed – the kind of thing that can be put on an agenda, tracked for progress, and then checked off as complete. *Id.* Second, the government must prove that the public official made a decision or took an action on that question, matter, cause, suit proceeding, or controversy, or agreed to do so. *Id.* The Court held that "merely setting up a meeting, hosting an event, or calling another official" does not qualify as such a decision or action. *Id.* at 2359.

Petitioner argues that the Court's jury instructions were improper in light of *McDonnell* in two respects. First, Petitioner argues that the instructions did not adequately explain to the jury how to identify a "question, matter, cause, suit, proceeding or controversy." Petitioner asserts that the Court did not instruct the jury that it had to identify a question or matter involving a "formal exercise of governmental power." (Doc. 217-1 at p. 8). The Court instead held that "official acts" include "decisions or actions generally expected of the public official." (Doc.

7

160 at p. 118). Second, Petitioner argues that the Court failed to convey to the jury that it had to find that Petitioner made a decision or took an action on an identified question or matter (Doc. 217-1 at p. 9). The Court instructed that "official action" includes the "exercise of both formal official influence such as a legislative vote on legislation" or "informal official influence such as a legislator's behind the scenes influence on other public officials" (Doc. 160 at p. 118).

Without deciding whether the Court's jury instructions were in fact improper, the Court concludes that the *McDonnell* decision was not so novel that it constitutes cause for Petitioner's procedural default.[7] A claim is novel when it was not reasonably available at the time of petitioner's direct appeal. *Reed v. Ross*, 468 U.S. 1, 14 (1984). An argument is reasonably available when counsel would have known of the issue and could advise whether a client' interest would be best served by making the argument or not. *Id.* In *Bousley*, the Supreme Court clarified the term "reasonable availability" by holding that where "the Federal reporters are replete with cases" involving challenges to the law identical to the Petitioner's, Petitioner's claim is not novel. *Bousley v. United States*, 523 U.S. 614, 622 (1998).

Petitioner's challenges to the Court's jury instructions could have been raised on appeal because they were reasonably available given the existing case law at the

---

[7] The Court notes that some of crimes Petitioner was convicted of, including the RICO count (Count 1) and the use of a telephone in aid of racketeering counts (Counts 3-6), are predicate acts of bribery in violation of Louisiana state law, rather than federal bribery law, which *McDonnell* addressed. La. R.S. 14:118. However, the Louisiana Supreme Court has held that there is no significant difference between the meaning of "official act" under the federal bribery statute and the meaning of "conduct in relation to his position, employment, or duty" under the Louisiana bribery statute. *State v. Smith*, 49267 (La. 1968); 212 So.2d 410, 413.

time of appeal. Prior to *McDonnell*, the Supreme Court itself had already laid the foundation for narrowing the definition of "official act" in *United States v. Sun-Diamond Growers of California*. 526 U.S. 398 (1999). In *Sun-Diamond*, the Supreme Court indicated that while numerous activities such as visiting schools and speaking to constituents about policy might generally be considered "official acts," it would be absurd to consider them within the scope of the anti-bribery statute. *Id.* This language parallels *McDonnell's* holding that a public official must take action on a question or matter that involves something more than merely setting up a meeting, hosting an event, or calling another official does not qualify as such a decision or action.

Several lower courts further expounded on *Sun-Diamond's* limitation. In *Valdes v. United States,* the Court of Appeals for the District of Columbia Circuit held that "question" and "matter" refer to a class of questions or matters whose answer or disposition is determined by the government. *Valdes v. United States*, 475 F.3d 1319, 1324 (D.C. Cir. 2007). The D.C. Circuit continued by giving examples, such as "should a person be prosecuted" or "what firm should supply submarines for the Navy?" This language is akin to requiring that an official act involve a formal exercise a governmental power and something relatively circumscribed, as the Supreme Court decided in *McDonnell*. Accordingly, because the Supreme Court's decision in *McDonnell* does not excuse Petitioner's procedural default, he is barred from challenging the Court's jury instructions in his Motion to Vacate.

## 2. Actual Innocence

Petitioner also asserts that given *McDonnell*'s clarification of the term "official act," he is actually innocent of the crimes with which he is charged, all of which are based on bribery. (Doc. 217-1). Regardless of whether a petitioner has raised a claim on direct appeal, a petitioner's conviction may be vacated if he can prove actual innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To establish actual innocence, a petitioner must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* The Supreme Court has repeatedly emphasized that this exception is limited to "extraordinary" cases involving a manifest miscarriage of justice. *See, e.g., Smith v. Murray*, 477 U.S. 527, 537 (1986); *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Given the evidence presented at trial, the Court is unable to conclude that it is more likely than not that no reasonable juror would have convicted Petitioner. The Court applies the *McDonnell* definition of "official act" to Petitioner's case. As stated previously, it consists of two components. The Court addresses each of these in turn.

First, an "official act" must involve a formal exercise of governmental power that is similar in nature to a cause, suit, proceeding or controversy. *McDonnell* at 2369. A typical meeting, call, or event arranged by a public official is not of the "same stripe" as a lawsuit before a court. *Id.* at 2359-59. However, certain

decisions do qualify as "official acts," including whether a state commission will allocate money to a particular cause, whether a state's health insurance plan will cover a particular drug, and whether state university researchers will initiate a study of a particular drug. *Id.* at 2369-2370. In the instant case, Petitioner received funds in exchange for facilitating the awarding of New Roads' contracts to Cifer. *U.S. v. Nelson*, 732 F.3d 504, 511 (5th Cir. 2013). Petitioner also received funds in exchange for assisting Cifer in obtaining a three to four million dollar grant from the EPA. *Id.* at 521. The awarding of a city contracts and the allocation of federal funds to a particular entity are equivalent to a state commission allocating money to a particular cause. Moreover, although the Fifth Circuit has not squarely addressed the issue of whether the decision to award government contracts constitutes an official matter under *McDonnell,* as the United States points out, multiple other circuits have answered the question in the affirmative. *United States v. Repak*, 852 F.3d 230, 253 (1st Cir. 2017); *United States v. Boyland*, 862 F.3d 279 (2d Cir. 2017).

*McDonnell*'s second requirement is that Petitioner must have made a decision or taken an action on that question or matter or agreed to do so. *McDonnell* at 2368. The facts indicate that Petitioner not only agreed to take action to have the city award Cifer contracts and secure funding from the EPA, but also followed through on such action. First, the evidence at trial revealed that Petitioner agreed to help Cifer obtain contracts with the city by virtue of his position as mayor and aid Cifer

11

in support of its EPA grant request in exchange for kickbacks. *Id.* at 510, 512. Moreover, Petitioner took several actions to help Cifer obtain city contracts. Petitioner drafted a proposed city ordinance requiring the cleanliness of garbage cans in order to benefit Cifer and then published an article in support of the ordinance in the local paper. *Nelson* at p. 511. Nelson instructed a city employee to send a request to the Louisiana Department of Environmental Quality, seeking support of legislation favorable to Cifer. *Id.* Petitioner used New Roads' "robo call" system to disseminate a pre-recorded message to residents from him as mayor; the message described the Cifer system and touted that it would minimize the risk of contracting the H1N1 outbreak. *Id.* These actions went far beyond merely "setting up a meeting, hosting an event, or calling another official." *McDonnell*, 136 at 2356. Petitioner also took action to help Cifer secure EPA grants. Petitioner sent a letter on Cifer's behalf to the EPA Administrator, signed and printed on mayoral letterhead, which urged the EPA to issue a grant to the creators of Cifer 5000. *Id.* at 512. Accordingly, because Petitioner, even under *McDonnell*'s narrowed definition of "official act", was given something of value in exchange for agreeing to and actually influencing an official act, Petitioner's motion to vacate because of "actual innocence" is denied. 18 U.S.C. § 201.

### B. Ineffective Assistance of Counsel

Next, Petitioner seeks to vacate his conviction based on the alleged ineffective assistance of counsel during the plea-bargaining process. Petitioner asserts that Mr. Pate, the attorney he hired to replace Mr. Crifasi and Ms. Pierson, provided him

with ineffective assistance while Petitioner was considering whether or not to plead guilty. (Doc. 246-1 at p. 11). Petitioner asserts that but for Mr. Pate's advice, Petitioner would have pleaded guilty and received a lesser sentence.

The Supreme Court defined the standard for proving ineffective assistance of counsel claims in *Strickland v. Washington.* 466 U.S. 668 (1984). There, the Court articulated a two-step test in which a petitioner must prove (1) that counsel's representation fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced the defense. *Id.* at 2064-2069. The Supreme Court has also held that a criminal defendant is entitled to effective assistance of counsel during the plea-bargaining stage. *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010). In the instant case, the evidence presented does not show that Mr. Pate's performance fellow below an objective standard of reasonableness. Moreover, even assuming Petitioner's allegations regarding the advice Mr. Pate provided are true, the Court concludes that Petitioner fails to meet the prejudice standard of Strickland.[8]

### 1. *Objective standard of Reasonableness*

Petitioner asserts that Mr. Pate acted deficiently in several respects. Unfortunately, given that the events in question occurred over eight years ago, the evidentiary hearing in 2018 provided an incomplete picture of the advice Mr. Pate provided to Petitioner. Defendant did not testify in support of his motion to vacate.

---

[8] The Court notes that ineffective assistance claims may be brought for the first time in a collateral proceeding under §2255 regardless of whether a defendant raised the issue earlier. *Massaro v. United States*, 538 U.S. 500, 505-09 (2003).

Moreover, Mr. Pate, who did testify, had little recollection of what occurred eight years prior. For instance, Mr. Pate could not recall if he advised Petitioner of the consequences of the breach prior to notifying the Government that Petitioner was withdrawing from the plea agreement. (Doc. 258 at p. 108). However, it is clear from the uncontroverted testimony of Mr. Crifasi that Petitioner was indeed informed of the consequences of such breach. (Doc. 252 at p. 65). The evidence indicates that Petitioner had already decided to withdraw from the plea agreement when he sought Mr. Pate out to represent him at trial.

### 2. *Prejudice*

In order to demonstrate prejudice in the plea bargaining stage, a petitioner must prove that, absent counsel's deficient performance, there is a reasonable probability that (1) he would have pled guilty pursuant to the plea agreement, (2) the prosecution would not have withdrawn the agreement, (3) the Court would have accepted the agreement, and (4) the punishment would have been less severe. *Lafler v. Cooper*, 566 U.S. 156, 164 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The Fifth Circuit has instructed that the defendant "bears the 'highly demanding and heavy burden in establishing actual prejudice,' not merely that 'the errors had some conceivable effect on the outcome of the proceeding.'" *Givens v. Cockrell*, 265 F.3d 306, 310 (5th Cir. 2001) (quoting Williams v. Taylor, 529 U.S. 362, 394 (2000)). In the instant case, even assuming Petitioner's allegations

regarding Mr. Pate's representation are true, the Court concludes that Petitioner has not presented sufficient evidence to indicate a reasonable probability that he would have pled guilty pursuant to the plea agreement.

First, one of Petitioner's primary arguments is that absent Mr. Pate's erroneous advice regarding Petitioner's sentencing exposure under the plea agreement, Petitioner would have pled guilty. Petitioner has submitted a declaration asserting that Mr. Pate advised that Petitioner would receive a minimum of seven to eight years imprisonment under the plea agreement. (Doc. 217-2 at p. 4). Mr. Pate could not recall saying this. (Doc 252 at p. 33). Petitioner asserts that had Mr. Pate *correctly* advised him that he would receive twenty-four to thirty months imprisonment he would have pled guilty. (*Id.*).

Assuming that Mr. Pate did, in fact, inform Petitioner that the plea agreement would result in seven to eight years in prison, Petitioner's declaration that he would have pled guilty but for Mr. Pate's advice is not credible. Mr. Crifasi testified that when he represented Petitioner, he explained to him that he faced a maximum prison term of eighteen months under the terms of the plea agreement, even less than the twenty-four to thirty months that Petitioner claims would have induced him to plead guilty. (Doc. 252 at p. 49). However, even with the eighteen-month maximum sentence, Defendant was unwilling to follow through with the plea agreement despite Mr. Crifasi's advice. Thus, Defendant's contention that he was prejudiced by Mr. Pate's failure to advise him of the correct prison term is not supported by the evidence.

Second, the Court concludes that despite Petitioner's contentions, he understood the terms of the plea agreement and thus was not prejudiced by Mr. Pate's failure to explain its terms to him. Even if Mr. Pate did not fully explain the plea agreement to Petitioner, his previous counsel certainly did. Mr. Crifasi testified that he carefully explained the details of the plea agreement to Petitioner, section by section, before Petitioner retained Mr. Pate. (Doc. 252 at pp. 65-66). Mr. Crifasi testified that he believed that Petitioner fully understood the terms of the plea agreement. (*Id.* at 69). As such, Petitioner was informed of the maximum sentence and that the stipulation of facts would be admitted into evidence at the trial if he chose to breach the agreement. Thus, even assuming that Mr. Pate failed to fully explain the terms of the agreement to Petitioner, Petitioner cannot credibly make the argument that he was prejudiced because throughout the plea negotiation phase of his case, he had the benefit of competent counsel that fully explained the complete terms and the consequences of breach to Petitioner.

Mr. Crifasi testified that he fully explained the benefits of entering into the plea agreement to the Petitioner. He explained to Petitioner that the plea agreement limited the loss amount for sentencing purposes, and as a result, his jail exposure would be limited by the terms of the plea agreement. (Doc. 252 at p. 68). He also explored possible defenses with Petitioner and explained that he did not find them viable. (*Id.*). He advised Petitioner that the plea agreement was the best option for proceeding in the case. (*Id.*). In spite of all of this, Petitioner elected to reject the plea agreement and to seek new counsel. Thus, the Court concludes that

Petitioner has not established a reasonable probability that but for Mr. Pate's advice regarding the value of the plea agreement, he would have pled guilty.

Finally, the evidence indicates Petitioner sought new counsel because he simply did not wish to plead guilty at all. Mr. Crifasi testified that Petitioner was reluctant to sign the plea agreement in the first place. (Doc. 252 at p. 70). Further evidence of Petitioner's reluctance to plead guilty was offered by the testimony of his father, Mr. Thomas Nelson, Sr. who testified that he had to prompt Petitioner to authorize Ms. Pierson to submit the plea agreement to the Government after Petitioner signed it. (*Id.*) Moreover, although Mr. Pate could not remember the exact details of his discussions with Petitioner about the proposed plea agreement, he was clear that Petitioner came to him solely because Petitioner was uncomfortable with the plea deal and did not want to resolve the case by pleading guilty. (Doc. 252 at pp. 33, 77, 81). Thus, Petitioner has not proven that there was a reasonable probability he would have pleaded guilty but for Mr. Pate's advice.

## IV. CONCLUSION

Accordingly,

The **Motion to Vacate (Doc. 217)** is **DENIED AS MOOT** and the **Amended Motion to Vacate (Doc. 246)** is **DENIED**.

Baton Rouge, Louisiana, this 24th day of December, 2018.

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**